UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Strom Engineering Corp.,**

    *Plaintiff*,

-v-

**International Fiber Corp.,**

    *Defendant*.

**Case No. 3:12-cv-035**

**Judge Thomas M. Rose**

___

**ENTRY AND ORDER GRANTING IN PART PLAINTIFF STROM ENGINEERING CORP.'S MOTION FOR SUMMARY JUDGMENT, DOC. 27. STROM'S MOTION IS GRANTED WITH REGARD TO ALL BREACH OF CONTRACT CLAIMS EXCEPT INVOICE 14244 AND 14688. PLAINTIFF STROM ENGINEERING'S MOTION FOR SUMMARY JUDGMENT ON ITS UNJUST ENRICHMENT CLAIM ON INVOICE 14244 IS GRANTED. DEFENDANT INTERNATIONAL FIBER CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DOC. 26, IS DENIED IN PART. DEFENDANT'S MOTION IS DENIED ON ALL CLAIMS EXCEPT INVOICE 14688, UPON WHICH IT IS GRANTED AND 14244, UPON WHICH IT IS GRANTED WITH REGARD TO THE BREACH OF CONTRACT CLAIM. PLAINTIFF IS GRANTED UNTIL OCTOBER 18, 2013 TO SUBMIT DOCUMENTATION IN SUPPORT OF ITS REQUEST FOR ATTORNEY'S FEES AND COSTS.**

___

Pending before the Court are cross-motions for summary judgment, each asserting that no genuine issue of material fact exists that would prevent judgment being entered in the party's favor on some or all claims. The parties are engaged in litigation stemming from billing and payment for replacement employees Plaintiff Strom Engineering provided to Defendant International Fiber Corporation during a strike.

Strom Engineering asserts that International Fiber has failed to pay for services rendered, resulting in breach of contract and unjust enrichment. International Fiber believes that Strom's invoices overstate hours actually worked. Strom counters that International Fiber Corporation is

1

contractually barred from contesting invoices for services rendered. To this, International Fiber answers that Strom's failure to perform conditions precedent obviates the contractual bar and further asserts that claims against it have been discharged by virtue of accord and satisfaction. Strom answers that accord and satisfaction do not apply, and even if it did, a timely retender of International Fiber's partial payment precludes its application. All of this will be sorted out below.

I.      **Factual Background**

Defendant International Fiber Corporation manufactures cellular fiber products from three plants, including one in Urbana, Ohio, that employs 90 unionized workers. On May 3, 2011, International Fiber locked out its union employees of the Urbana plant in a labor dispute. Kirsten Lenartowich, International Fiber's Vice President of Human Resources and Labor relations contracted with Plaintiff Strom Engineering for 47 Strom employees to replace the 90 union employees.

The parties' relationship was governed by a service agreement stipulating the hourly rate and per diem rate of the replacement employees. The service agreement further states with regard to payroll hours for the Strom employees:

> Timekeeping. The workweek for all STROM Employees shall end each Sunday at 11:59 p.m. [International Fiber] will sign all properly completed timesheets presented to it by STROM Employees in order to record compensable working time of each STROM Employees. [International Fiber] shall designate an individual authorized to sign such timesheets on its behalf. If [International Fiber] has not provided signed timesheets to STROM by 12:01 p.m. of the following Tuesday, STROM shall process payroll based upon its internal records. Notwithstanding and provision contained herein to the contrary, [International Fiber] shall be deemed to have accepted, and waives its right to challenge, the accuracy of all payroll hours invoiced unless it notifies STROM of a discrepancy within ten (10) calendar days after the end of the disputed workweek.

Service Agreement at ¶ 4. Notably, the contract grants International Fiber ten days to dispute payroll hours invoiced, *id.* at ¶ 4, and thirty days to challenge all other invoice items. *Id.* at ¶ 5. Moreover, after International Fiber's opportunity to dispute invoices expired, "[International Fiber] acknowledges the items and waives it right to challenge the validity of the items." *Id.* at ¶ 5.

By mid-July, Kirsten Lenartowich believed the invoices she was receiving were higher than International Fiber had anticipated. Thus, International Fiber began having Strom employees swipe in and swipe out. Lenartowich had informed Randy Gibbs and Danny Newton to review and sign Strom timesheets. Lenartowich Dep. at 56. By July 25, 2013, Lenartowich stated that she was receiving the timesheets with Strom's invoices, sometime after the period for challenging them had expired. Despite the ongoing issues with invoicing, the relationship continued, with International Fiber not challenging invoices submitted between May 2011 and November 2011.

On August 31, 2011, the International Fiber employees returned to work and the service agreement between International Fiber and Strom expired.

On October 7, 2011, James Gramkee of International Fiber submitted payment for the four invoices numbered 13779, 13824, 13894 and 13919, indicating that he was paying a reduced amount based upon "discussions with [International Fiber] representative Kirsten Lenartowich and Strom representative Jason Hans." Gramkee further indicated with regard to five additional invoices that International Fiber was "currently investigating billing discrepancies with invoices 13966, 14041, 14068 and 14116 and 14190." Notably, the letter is not addressed to anyone in particular:

3

> October 7, 2011
>
> Strom Engineering Corporation
> 10505 Wayzata Blvd.
> Minnetonka, MN 55305
>
> Re: Invoices 13779; 13824; 13894 and 13919
>
> Please find enclosed with this letter [International Fiber] check # 189311 in the amount of $526,317.88 which represents payment for the invoices 13824; 13894 and 13919 less reductions for overcharges in the amount of $7,056.97 ($2,165.97 for invoice # 13779 - which was paid previously with check # 188269 dated August 1, 2011- and $4,891 for invoice 13824). It is my understanding that these reductions for overcharges have been agreed to by Strom based upon discussions with [International Fiber] representative Kirsten Lenartowich and Strom representative Jason Hans.
>
> We are currently investigating billing discrepancies with invoices 13966; 14041; 14068; 14116 and 14190.
>
> Please contact me or Kirsten at 716-693-4040 if you have any questions about this matter.
>
> Very Truly Yours,
>
> James E. Gramkee
> Chief Financial Officer
> Cc: K. Lenartowich

Lenartowich Depo. Ex. 15.

There is, however, no evidence that there was any agreement between Lenartowich and Hans. Even Lenartowich, when deposed, could only state that she thought she agreed to this with Hans, but could not point to any email, letter, or conversation where it would have been formed. See Lenartowich Depo. at 90-92, 92 ll. 17 – 19, 108-110 ll. 2-8.

In an October 10, 2011 letter, Lenartowich objected to invoices where employees did not swipe in or swipe out their time cards and sought to challenge the five invoices referred to at the

end of the October 7, 2011 letter numbered 13966, 14041, 14068, 14116 and 14190 dated from August 12, 2011 through September 9, 2011.  Lenartowich Depo. Ex. 21.

On October 28, 2011, James Gramkee of International Fiber sent a letter similar to the October 7, 2011 letter, again stating that International Fiber was reducing the invoiced amounts owed by $221,418.59 based upon "overcharges" that had been agreed to by Hans and Lenartowich.  Lenartowich Dep. Ex. 14.  Enclosed was a check in the amount of $434,748.72 for the five invoices numbered 13966, 14041, 14068, 14116 and 14190 dated from August 12, 2011 through September 9, 2011.  Lenartowich Depo. Ex. 14, Doc. 22-13, 2-3, Doc. 22-21, 2.

On October 31, 2011, Strom deposited International Fiber's payment. Gramkee Aff. Ex. H-1.  On or about December 2, 2011, Strom attempted to retender the $434,748.72 payment made by International Fiber on invoices 13966, 14041, 14068, 14116, and 14190. (*Id.* at ¶ 4.) International Fiber rejected Strom's attempted retender and returned Strom's unendorsed check. (*Id.* at ¶ 5.)

On November 11, 2011, Strom submitted invoice number 14688 to International Fiber seeking reimbursement for vehicle rental. (Complaint, at ¶ 21; see also, Ex. H, Gramkee Aff., Ex. H-5.) (Ex. H, Gramkee Aff., Ex. H-5.) However, per the Service Agreement, International Fiber is required to reimburse Strom "for documented expenses reasonably incurred by Strom or the Strom Employees to transport the Strom Employees to and from the work location . . . ." (Ex. B, Service Agreement ¶ 4(a).) International Fiber refused to pay the invoice number  because it was not provided with any supportive documentation, leaving it unable to determine whether the represented expense was accurate and reasonably incurred. (Ex. H, Gramkee Aff. ¶ 10.)

5

Finally, International Fiber denies receiving invoice number 14244 prior to the initiation of this litigation. (See International Fiber's Response to Strom's Request for Admission ("International Fiber's RFA Responses") No. 1, (Exhibit I).)

Strom asserts that International Fiber has failed to pay $320,074.27 in outstanding invoices and a right to interest of over $100,000 plus a contractual right to legal fees of more than $31,000.

On February 2, 2012, Strom Engineering filed a complaint asserting breach of contract and unjust enrichment. On April 2, 2012, International Fiber Corporation filed an answer and counterclaim. International Fiber asserted that it had tendered $434,748.72 in full satisfaction of the five invoices numbered 13966, 14041, 14068, 14116 and 14190. International Fiber further asserted the positive defenses including laches, accord and satisfaction, and failure to perform conditions precedent. International Fiber asserted three counter claims: that Strom Engineering wrongfully interfered with International Fiber's business relationships, that Strom Engineering was a faithless servant, committed misrepresentation, and unjustly enriched itself.

The alleged factual predicate for International Fiber's counterclaims is the allegation that Strom wrongfully recruited International Fiber's Senior Production Supervisor, Butch Roberts to work for Strom. International Fiber also asserts that Strom Engineering submitted 20 invoices containing hours for which Strom failed to submit timesheets.

Harold Farmer, International Fiber's production manager, overheard a conversation during which a Strom supervisor, referred to as Stony, discussed employment opportunities with Butch Roberts, the assistant plant manager at International Fiber's Urbana facility. Farmer Aff.¶ 12 Ex. J. Roberts worked at the Urbana plant for approximately thirty years. Roberts Depo. 9:19-21, Ex. K. Roberts entered into an employment agreement with International Fiber on May

6

1, 2011. Ex. L. Within days after the lockout ended, Roberts resigned from International Fiber. (Ex. K, Roberts Depo. 17:7-18.) Prior to resigning, Roberts heard from the Strom employees working at International Fiber that there was an open assignment with Strom at American Crystal in Crookston, Minnesota. (Ex. K, Roberts Depo. 23:24, 24:1-3, 29:20-24, 30:1-6.)

Roberts resigned from International Fiber on a Friday, submitted an application with Strom the following Monday and was hired within days for the supervisor's position at American Crystal. (Ex. K, Roberts Dep. 22:10-17, 23:1-6, 20-24.) Similarly, several International Fiber employees were approached by a Strom supervisor to see if they were interested in employment with Strom. (Ex. C, Lenartowich Dep. 152:2-6; Ex. J, Farmer Aff. ¶ 11.) Bruce Burdick, a Strom supervisor, attempted to recruit Harold Farmer by informing Farmer that he would make more money with Strom and asking Farmer to keep him abreast if he ever needed a job. (Ex. J, Farmer Aff. ¶ 10.) Farmer was aware that Roberts was planning on leaving International Fiber to work for Strom before Roberts gave International Fiber his notice. (Ex. J, Farmer Aff. ¶ 14.)

## II.     Jurisdiction

The Court has federal question jurisdiction under 28 U.S.C. § 1332, as Strom Engineering is a Minnesota corporation with its principal place of business located in Minnetonka, Minnesota, and International Fiber is a Delaware corporation with its principal place of business in North Tonawanda, New York.

## III.    Legal Standard

Pursuant to *Federal Rule of Civil Procedure 56(a)*, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Ultimately, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

7

one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of proving the basis for its motion and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that show there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).

In determining whether a genuine issue of material fact exists, the Court must view the record and all of its reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the Court cannot weigh the evidence or try to determine the truth of any matter in dispute. *Anderson*, 477 U.S. at 249. Therefore, summary judgment shall be denied when there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992).

**IV.    Analysis**

**A.    Strom Engineering's Claim for Breach of Contract**

Strom asserts that it is entitled to summary judgment on its breach of contract claim by virtue of the plain language of a contractual requirement that International Fiber notify Strom of any discrepancy of payroll records within ten calendar days of the end of a work week:

> The work week for all STROM Employees shall end each Sunday at 11:59 p.m. [International Fiber] will sign all properly completed time sheets presented to it by STROM Employees in order to record compensable working time of each STROM Employee. [International

8

> Fiber] shall designate an individual authorized to sign such time sheets on its behalf. If [International Fiber] has not provided signed time sheets for STROM by 12:01 p.m. on the following Tuesday, STROM shall process payroll based upon its internal records. Notwithstanding any provision contained herein to the contrary, [International Fiber] shall be deemed to have accepted and waived its right to challenge, the accuracy of all payroll hours invoiced unless it notifies STROM of a discrepancy within ten (10) calendar days after the end of the disputed work week.

Service Agreement at ¶ 4.

International Fiber protests that it did not receive invoices within ten calendar days of any work week. Conceivably, this could preclude Strom's argument that International Fiber waived their right to contest hours worked after ten days. Lenartowich testified that Randy Gibbs was the person authorized to receive and sign time sheets. Doc. 22 at 56-58. Her testimony that he never received them, however, is hearsay not permitted by Rule 56, and thus fails to create a genuine issue of material fact on this point. However, Strom has provided testimony from its project coordinator, Andrew Castongue, to the effect that he weekly provided information regarding hours worked to Randy Gibbs, the day the week ended, or the day after. Doc. 27-3. Castongue also provided copies of these emails. *Id.* Castongue affies that he supplied the payroll information until International Fiber had provided Strom employees swipe cards to register their hours. This system, being in International Fiber's control and having supplanted Strom's timekeeping as the measure of hours worked, obviated the need to forward data to International Fiber.

Moreover, the contract also has a time limit for contesting invoices, this one of thirty days. Under the contract:

> [International Fiber] agrees that if it fails to provide written notice of any disputed invoice items within thirty (30) calendar days after receipt thereof, [International Fiber] acknowledges the item and waives it right to challenge the validity of the items.

9

Service Agreement, ¶ 5. Thus, both because of the ten-day bar and the thirty-day bar, International Fiber is no longer able to contest the hours worked by Strom.

**B.      Accord and Satisfaction**

International Fiber asserts that it is entitled to summary judgment on the basis of accord and satisfaction. Strom counters that it prevails against accord and satisfaction by virtue of the absence of a bona fide dispute, by the absence of the conspicuous notice required by Ohio's accord and satisfaction statute and by virtue of having retendered the amount both parties agree International Fiber did pay to Strom.

The Ohio accord and satisfaction statute provides:

> If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, all the following apply:
>
> (A) Unless division (B) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.
>
> (B) Subject to division (C) of this section, a claim is not discharged under division (A) of this section if either of the following applies:
>
>> (1) The claimant, if an organization, proves both of the following:
>>
>>> (a) Within a reasonable time before the person against whom the claim is asserted tendered the instrument to the claimant, the claimant sent a conspicuous statement to the person that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place.

10

> (b) The instrument or accompanying communication was not received by that designated person, office, or place.
>
> (2) The claimant, whether or not an organization, proves that within ninety days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. Division (B)(2) of this section does not apply if the claimant is an organization that sent a statement complying with division (B)(1) of this section.
>
> (C) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

R.C. § 1303.40

Strom claims that because International Fiber was temporally barred from contesting the number of hours worked and invoiced, there was no bona fide dispute allowing International Fiber to settle by means of accord and satisfaction. However, "it is not necessary that a dispute or denial be well founded, or that either party be right in his contentions, but it is essential that it be bona fide and honestly believed in." *Parma v. Wielicki* 2011 WL 6143156, 2 (Ohio App. 2011) (quoting *Morris Skilken & Co. v. Watkins Furniture Co.*, 176 N.E.2d 256, 259 (1961) quoting in turn, 1 C.J.S. *Accord and Satisfaction* § 32, p. 515)). While International Fiber was contractually barred from contesting hours worked and invoiced, rendering their position not well-founded, International Fiber apparently does honestly believe this was contestable.

Strom also claims that the International Fiber's notice was insufficiently conspicuous. The Ohio Revised Code itself defines the term "conspicuous":

> (10) "Conspicuous", with reference to a term, means so written, displayed, or presented that a reasonable person against which it is

11

> to operate ought to have noticed it. Whether a term is "conspicuous" or not is for decision by the court. Conspicuous terms include the following:
>
> (a) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (b) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Ohio Rev. Code § 1301.201.  The Court finds that nothing in International Fiber's letters of October 7 and 28 or the checks attached to them conspicuously informs Strom that cashing the check will have any unanticipated legal consequences.  A person receiving payments accompanied by cover letters may or may not persevere to the most inconspicuous portion of International Fiber's cover letter to realize that it was accepting an offer of partial payment as payment in full.  Thus, the absence of conspicuous notification precludes International Fiber from utilizing accord and satisfaction.

Moreover, accord and satisfaction is precluded by virtue of Strom's retender of the funds. International Fiber asserts that Ohio Revised Code § 1303.40(C ) deprives the retender of import. International Fiber reasons that Strom "knew that the instrument was tendered in full satisfaction of the claim," Ohio Rev. Code § 1303.40(C ), by virtue of the sentence informing it of this buried in the October 7 and 28 letters.  Such is not the case.  Both the absence of conspicuous notification and the retender of the funds preclude accord and satisfaction.

**C.** **Attorney Fees and Interest**

Similarly, Strom asserts that an award of attorney fees and interest are a matter of straightforward language of the contract:

> [International Fiber] agrees that if it fails to provide written notice of any disputed invoice within thirty (30) calendar days after receipt thereof, [International Fiber] acknowledges the item and waives its right to challenge the validity of the items. Any undisputed invoice item not paid in accordance with this [provision] shall bear annual interest of twelve (12) percent. [International Fiber] agrees to pay any reasonable attorney and other fees that may be incurred by STROM to collect any undisputed amounts not paid when due.

*Id.* at ¶ 5. This provision is clear: International Fiber is liable for attorney fees and interest.

**D.     Invoice 14688**

International Fiber seeks summary judgment on its claim that it should not be required to pay Invoice 14688, an invoice for $15,311.37 for "Vehicle Rental – Mileage." Doc. 22-22 at 1. International Fiber asserts that Strom fails to fulfill the contractual requirement that invoices be supported by documentation. International Fiber's obligation under the service agreement to reimburse Strom for transportation costs is as follows:

> <u>Transportation</u>. [International Fiber] shall reimburse STROM for documented expenses reasonably incurred by STROM or the STROM Employees to transport the STROM Employees to and from the work location . . .

(Ex. B, Service Agreement, Ex. B, ¶ 4(a).) As a condition precedent to International Fiber's reimbursement obligation, Strom must provide documentation of expenses. A "condition precedent" is a condition which must be performed before the obligations in the contract become effective. *Verdi Constr., Inc. v. Cent. Ohio Cmty. Improvement Corp*, 2008 U.S. Dist. Lexis 91551, at *10 (S.D. Ohio Nov. 12, 2008), citing *Troha v. Troha*, 663 N.E.2d 1319 (Ohio App. 1995). If the condition is not fulfilled, the parties are excused from performing under the contract. *Id.* While both Gramkee and Lenartowich both assert that the invoice had no supporting documentation, Gramkee aff. & Lenartowich, Depo. 141:1-13, Strom's only response is to attack the testimony of Gramkee as being hearsay as to what Lenartowich would have received,

13

ignoring Lenartowich's assertions. Neither has Strom produced any copies of or testimony to support the existence of the contractually required documentation. It appears there is no genuine issue of material fact concerning the absence of supporting documentation. International Fiber's motion concerning Invoice 14688 will be granted.

**E.      Invoice 14244**

International Fiber relies upon the testimony of Lenartowich that International Fiber never received invoice 14244 for $61,294.91 for hours worked disbanding upon completion of the contract. The Court, accepting uncontradicted testimony both that the invoice was sent and that it was not received, will grant International Fiber's motion for summary judgment against Strom's contractual claim for invoice 14244. While the service agreement does state that Strom is to send invoices weekly, it does not provide the explicit waivers for failure to comply that are contained regarding failures to object to hours worked or invoices. International Fiber does not contest that these hours were worked, relying instead on the position that its failure to receive the invoice contractually precludes Strom from presenting an invoice now. Strom also has a claim for unjust enrichment and on this claim it will be awarded $61,294.91 for the worked performed in invoice 14244. This amount will not be subject to the contractually stipulated 12% interest.

**F.      Tortious Interference**

International Fiber asserts that Strom tortuously interfered with International Fiber's relationship with Butch Roberts.

> The tort of tortious interference with an employment relationship occurs when one party to the relationship is induced to terminate the relationship by the malicious acts of a third person who is not a party to the relationship at issue. *Condon v. Body Vickers & Daniels* (1994), 99 Ohio App.3d 12, 22.
>
> "The basic principle of a 'tortious interference' action is that one, who without privilege, induces or purposely causes a

14

> third party to discontinue a business relationship with another is
> liable to the other for the harm caused thereby." *Wolf v.
> McCullough-Hyde Mem. Hosp*. (1990), 67 Ohio App.3d 349, 355.
> "The doctrine of qualified privilege is applicable to tortious
> interference cases, and acts performed within a business
> relationship are considered subject to a qualified privilege."
> *Chandler & Assoc., Inc. v. America's Healthcare Alliance, Inc.*
> (1997), 125 Ohio App.3d 572, 583. To overcome a qualified
> privilege, a party must show the wrongdoer acted with actual
> malice, which denotes an unjustified or improper interference with
> the business relationship. *Id.*

*Walter v. ADT Security Systems, Inc*., 2007 WL 1874247, *7-8 (Ohio App. 2007).

International Fiber has produced no evidence of any malice with regard to Strom's inducement of Roberts to leave International Fiber and join Strom. Wherefore, Strom's motion for summary judgment on International Fiber's claim of tortious interference will be granted.

**G.     Faithless Servant**

Strom also moves the Court for summary judgment on International Fiber's faithless servant claim. International Fiber does not oppose this part of Strom's motion. Strom's motion will thus be granted on International Fiber's faithless servant claim.

**H.     Misrepresntation**

International Fiber claims Strom is liable for misrepresentation regarding the amount of hours worked by Strom employees, and resultant overbilling of International Fiber. Ohio recognizes a cause of action for fraudulent misrepresentation upon a showing of (1) a representation, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) resulting injury proximately caused by the reliance. See *Applegate v. Northwest Title Co*., 2004 WL 585592 (Ohio App.

15

2004) (citing *Brewer v. Brothers*, 611 N.E.2d 492, (Ohio App. 1992); *Brothers v. Marrone-O'Keefe Dev. Co.*, LLC, 2003 WL 22999474 (Ohio App. 2003)).

However, a party "should not be permitted to circumvent its contract terms by virtue of labeling the action a tort." *Universal Contracting Corp. v. Aug*, 2004 WL 3015325, *5 (Ohio App. 2004) (quoting *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519 (Ohio 1997)).  Thus, "Ohio courts have limited the ability to bring a negligent-misrepresentation tort claim where a contract exists between business entities." *Id.* (citing *Textron Financial Corp. v. Nationwide Mutual Insurance Co.*, 684 N.E.2d 1261 (Ohio App. 1996)).  Thus, International Fiber will not be allowed to recast its desire to contest hours worked under the contract as a tort claim.

## V.     Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, doc. 27, is **GRANTED** with regard to Strom's claims under the contract with regard to all invoices except 14688 and 14244.  Interest and attorney fees will is awarded with regard to these claims.  Summary judgment is **GRATNED** to Plaintiff on Plaintiff's unjust enrichment claim with regard to invoice 14244.  Summary judgment is **GRANTED** to Defendant with regard to Plaintiff's breach of contract claim for invoice 14244.  Defendant's Motion for Summary Judgment, doc. 26, is **DENIED** in all other regards.  Plaintiff's Motion for Summary Judgment, doc. 27, is **GRANTED** with regard to International Fiber's counterclaims for tortious interference, faithless servant and misrepresentation.  Plaintiff is **GRANTED** until October 18, 2013 to submit documentation in support of its request for attorney's fees and costs.

**DONE** and **ORDERED** in Dayton, Ohio this Wednesday, September 18, 2013.

                 **s/Thomas M. Rose**

               _____
                 THOMAS M. ROSE
             UNITED STATES DISTRICT JUDGE